UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| **KENDRICK SMITH** | § | |
| *Plaintiff* | § | |
| | § | |
| | § | **CIVIL ACTION NO. 5:22-cv-00137** |
| | § | |
| **vs.** | § | **JURY TRIAL REQUESTED** |
| | § | |
| | § | |
| **LIBERTY EYLAU** | § | |
| **INDEPENDENT SCHOOL DISTRICT** | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Plaintiff Kendrick Smith ("Plaintiff" or "Smith"), who files this Plaintiff's Original Complaint against Defendant Liberty Eylau Independent School District ("Defendant" or "LEISD"), and in support thereof respectfully shows as follows:

### I.   INTRODUCTION

1. Plaintiff Kendrick Smith experienced a hostile work environment, discrimination based on race, color, national orgin, harassment, and retaliation by the acts and omissions of Defendant Liberty Eylau ISD, in violation of federal and state law, for which Plaintiff Kendrick Smith now sues.

### II.   PARTIES

2. Plaintiff Kendrick Smith is a male adult citizen of Texas, who resides in Bowie County, Texas, and was employed with Defendant Liberty Eylau ISD from 2015 through late 2022.

3. Defendant Liberty Eylau Independent School District is a public school district operating in Bowie County, Texas, where Liberty Eylau High School is located. Liberty Eylau

Independent School District is a political subdivision and derives its legal status from Article VII of the Constitution of the State of Texas and from the Texas Education Code as passed and amended by the Texas Legislature and can be served with process by serving the President of the LEISD school board or the Superintendent. Ronnie Thompson is LEISD's Superintendent. *See* Tex. Civ. Prac. & Rem. Code § 17.024(c). The LEISD School Board and Superintendent Thompson are responsible for the hiring and firing, employee retention policies, and enforcement of procedures for the operation of LEISD. LEISD may be served with process through its Superintendent at 2901 Leopard Drive, Texarkana, Texas 75501, or wherever LEISD may be found.

### III.   JURISDICTION & VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).  This action arises under and is brought pursuant to the Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq (1964), also known as Title VII of the Civil Rights Act of 1964 ("Title VII"). In addition, the Court has supplemental jurisdiction over Plaintiff's claims pursuant to Chapter 21 of the Texas Labor Code and Plaintiff's Texas common law claims.

5. As to these causes of action, Plaintiff Smith has exhausted his administrative remedies by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 17, 2022.  The EEOC issued a "Dismissal and Notice of Rights" ("Notice of Right to Sue") on July 29, 2022.

6. Venue is proper in the U.S. District Court for the Eastern District of Texas, Texarkana Division, pursuant to 42 U.S.C. § 2000e(5)(f)(3) because it is the judicial district in the

state in which the unlawful employment practices complained of are alleged to have been committed, the judicial district in which the employment records relevant to such practice are maintained and administered, and the judicial district in which the aggrieved person worked or would have worked but for the alleged unlawful employment practice.  Venue is further proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

### IV.    CONDITIONS PRECEDENT

7. All conditions precedent to the filing of this action have been performed, excused, or waived.

### V.    NATURE OF THE CLAIM

8. Plaintiff Smith seeks actual, compensatory and exemplary damages for Defendant Liberty Eylau Independent School District's discrimination and harassment against him based on his race, color, and national origin, for creating a hostile work environment based thereon, for discriminatory practices, and for Defendant Liberty Eylau Independent School District's retaliation for engaging in protected activity in violation of Title VII, Section 1981, the Texas Commission on Human Rights Act, Texas Labor Code § 21.001 et. seq. (the "TCHRA").  See *Affidavit of Kendrick Smith* ("Affidavit of Kendrick Smith" or "Affidavit", attached hereto and fully incorporated by reference herein).

## VI.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**Kendrick Smith**

9. Kendrick Smith ("Kendrick Smith" or "Mr. Smith") worked as an educator, coach, and assistant principal at Pleasant Grove Independent School District for fifteen years before Smith commenced working with Liberty Eylau Independent School District ("LEISD" or the "District") in 2015.  Mr. Smith was employed with LEISD for six years thereafter.

10. On February 26, 2020, Smith executed a "2020-2021 Term Contract 2 Years with Certification Addendum" (See **Exhibit A – "Term Contract" (executed February 26, 2020), attached hereto and fully incorporated by reference herein)** with LEISD in which, among other rights, duties, representations, and obligations, the District agreed to employ Kendrick Smith as a Certified Administrator for the 2020-2021 and 2021-2022 school years.

11. Mr. Smith has impressive credentials and an impeccable record of professional service.  He served as Principal of Liberty Eylau High School from his arrival in 2015 until he was improperly removed from the position on January 5, 2021.  LEISD's acts and omissions are inappropriate, unethical, and unjustified, and the investigation resulting from the report submitted by LEISD to TEA SBEC on February 2, 2021 was improper and the allegations unsupported.

**The Group Text**

12. On April 30, 2019, LEISD employee Nidia Coleman ("Ms. Coleman") sent a group text message ("Group Text") to Kristi Brown and three other recipients (none of which was Kendrick Smith) about a 'situation' involving her then 17-year-old daughter, Mariah Coleman ("MC") **(See Exhibit B – April 30, 2019 Group Text Message from Nidia**

**Coleman to Kristi Brown and three other recipients, none of which was Kendrick Smith (2 Texts), attached hereto and fully incorporated by reference herein)** stating as follows:

*AARICA HAS BEEN FUCKING MARIAH SINCE NOVEMBER YALL BETTER WATCH her AROUND YOUR CHILDREN!!!!  I am sure she isn't going to stop seeing her because she is sick in the head and need attention from little girls… Got close to me just to get to my daughter!!! Nasty BITCH!  She was still texting Mariah up to about 10 minutes ago and I caught them together at aarica's HOUSE about 2 hours ago!!! She said Mariah can make her own decisions she didn't make her talk to her even though she is a 35 year old grown ASS NASTY ASS BITCH!!!oh yeah!  This isn't the first underage female she has talked too…Just don't be stupid and let her in yourHB space like I did all she wants is your child I'm sure…She probably talking on the phone with Mariah right now or telling her to come back over!! Hope yall have a good night*

*Figured we all close FRIENDS SO EVERYBODY SHOULD KNOW*

*Oh y'all don't have nothing to say now … Let's have an OPEN discussion!!! I don't have to work tomorrow*

*She just texted mariah that I sent that ina group message…told YALL SHE STILL TEXTING HER*

**The Investigative Interview**

13. On January 4, 2021,  Mr. Smith was called to the LEISD Office for a meeting, but was not informed of the nature of the meeting. Acting as an 'investigator', LEISD attorney Rhonda Crass ("Ms. Crass") began her 'investigative interview' with Mr. Smith by asking 'how long he has known about an inappropriate relationship between 2019 LEISD graduate Mariah Coleman and 2004 LEISD graduate Aarica Ray Boyd ("Ms. Boyd").'  Mr. Smith stated he was not aware of an "inappropriate relationship" between MC and Ms. Boyd, to which Ms. Crass responded "I am going to be straight-up with you, that is a lie.  Mrs. Coleman told me she told you in May 2019 about the incident.  Do you want to start over?"

14. Aside from constituting double-hearsay, the 'investigative interview' was clearly an interrogation intended to ambush Mr. Smith, who, after being accused by Ms. Crass of

lying, further explained that one day in May 2019 he was walking down the hall on a routine walk-through, and went to Ms. Coleman's room, who was also employed with Liberty Eylau High School at that time.  During the routine visit, the conversation led to Ms. Coleman telling Smith about her daughter MC having a relationship with Ms. Boyd. Mr. Smith asked Ms. Coleman if this was something that Ms. Coleman wanted to report, to which Ms. Coleman responded "no".  Although Ms. Coleman's response regarding reporting the 'relationship' was informative for Mr. Smith, it was not determinative of Mr. Smith's decision as to whether to report the 'relationship'.

15. Startled by the accusatory tone of the 'investigation' and of 'investigator' Ms. Crass, Mr. Smith erroneously stated during the January 4, 2021 interrogation 'I should have run it up the flagpole, but I failed to do so.' **(See Exhibit C – Emails, January 11-12, 2021, between Rhonda Crass & Paul K. Stafford ("January 11-12, 2021 Emails"), attached hereto and fully incorporated by reference herein)** This statement was made under severe duress, and Mr. Smith was aware that running conjecture and innuendo up a 'flagpole' is not the legal standard for such reporting determinations.  As the recipient of information from Ms. Coleman, Mr. Smith's 'cause to believe' was the legal standard in determining whether to report the information that he received from Ms. Coleman as *child abuse* or *neglect*.  Because Mr. Smith did not have 'cause to believe' that there was child abuse or neglect, and Ms. Coleman was unwilling or unable to provide any additional details of the 'relationship' in May 2019, Mr. Smith did not have 'cause to believe' that there was child abuse or neglect, then or now, and therefore Mr. Smith filed no report.

**The Statement, about The 'Situation'**

16. On January 8, 2021, Nidia Coleman executed a statement about the 'situation' (See **Exhibit D – January 8, 2021 Statement of Nidia Coleman ("January 8, 2021 Statement))**, stating as follows:

*I was asked who all knew about the situation.  I told her the night I sent a group text message out about what Coach Watson and I had just witnessed.  I told her that I told several people about the situation.  I told Kristi Brown, Kendrick Smith, Coach Harmon, Coach Franklin, Jodi Pompa, and several other people knew.  I told her after I found out I found out several people knew about it before I did.*

*She asked me what I told Mr. Smith.  I told her that I told him that Watson and I found my daughter at Aarica's house the night before and that I felt she should be banned from Liberty-Eylau.  The investigator asked me what his response.  I told her I honestly don't remember the actual response.*

*She asked me if I mentioned to him again at any point.  I told her we had conversations about it the next school year and he asked me if I wanted to move forward I did tell him that I had a conversation with my mother and that we decided to let it go and move forward with our lives since it was months later because my child had moved away to go to college, and my mother was now battling cancer.  We did not want to cause extra stress at this point.*

*I was asked if I knew if there was a sexually relationship between Mariah and Aarica.  I told the investigator that to this day I have no clue if there was a sexual relationship between her and my daughter.*

17. It is worth noting that Mr. Smith was not on the April 30, 2019 Group Text, and Ms. Coleman does not mention in her January 8, 2021 Statement the date she told Mr. Smith about the 'situation'.  According to the January 8, 2021 Statement, Ms. Coleman told Mr. Smith that she and Coach Watson had found her daughter MC at Aarica's house *the night before* – so, presumably, Ms. Coleman told Mr. Smith about the 'situation' the day after the occurrence of the subject of the April 30, 2019 Group Text, which would be on or about May 1, 2019.

18. During Ms. Crass's interrogation of Mr. Smith on January 4, 2021, Mr. Smith stated that Ms. Coleman told Mr. Smith about the 'relationship' in May 2019; however, Ms. Coleman's Group Text never mentions the word 'relationship', and Ms. Coleman only mentions the phrase 'sexual relationship' in the January 8, 2021 Statement to state that *'to this day I have no clue if there was a sexual relationship between her and my daughter'*. **(Exhibit D – January 8, 2021 Statement, attached hereto and fully incorporated by reference herein)**

19. Regarding Mr. Smith's response to Ms. Coleman regarding the 'situation', Ms. Coleman indicated in her January 8, 2021 Statement "I honestly don't remember the actual response." **(Exhibit D - January 8, 2021 Statement)** There is no indication from Ms. Coleman's January 8, 2021 Statement as to when she told the others listed, or who were the 'several other people' that knew, or how Ms. Coleman knew that these 'several other people' knew, or if they were employed with LEISD, or if *Kristi Brown, Coach Harmon, Coach Franklin, Jodi Pompa,* or the *'several other people'* responded in any way, or how. However, if LEISD contends that a conversation in May 2019 is sufficient for 'cause to believe' and should have resulted in a report of child abuse or neglect, there were certainly others who were privy to the 'situation' at that time, and it is unknown whether a report ensued from any of those known or unknown individuals.

20. Although Mr. Smith does not mention or recall any other conversations regarding the 'situation' after May 2019, Ms. Coleman's January 8, 2021 Statement states that she had conversations with Mr. Smith about the 'situation' the next school year; however, no dates or specifics are provided by Ms. Coleman.  According to Ms. Coleman's January 8, 2021 Statement, Mr. Smith asked Ms. Coleman if Ms. Coleman wanted to move forward, and

she told Mr. Smith that she 'had a conversation with her mother and that she and her mother decided to let it go and move forward with their lives since it was months later because Mariah had moved away to go to college, and Ms. Coleman's mother was now battling cancer'.  **(Exhibit D - January 8, 2021 Statement)**

**<u>No evidence of a 'sexual encounter' made known to Mr. Smith</u>**

21. During the January 4, 2021 interrogation, Mr. Smith was told by Ms. Crass that Mr. Smith put LEISD in a 'bad position with Title IX' in failing to report a 'sexual encounter'; however, there is no evidence of a 'sexual encounter' being made known to Mr. Smith in a manner that would result in 'cause to believe' that there was child abuse or neglect occurring.

**<u>No 'cause to believe' that child abuse or neglect had occurred or was occurring</u>**

22. Also during the January 4, 2021 interrogation by Ms. Crass, Mr. Smith was told by Mr. Crass that "this could cost him his job", and was asked "why didn't you report this to CPS".  The reason is clearly that Mr. Smith did not have 'cause to believe' that child abuse or neglect had occurred or was occurring.  Ms. Coleman's has indicated that she saw calls and messages on the call log of MS's phone, but did not state that she saw or read any content or overheard any conversation, and Ms. Coleman's January 8, 2021 Statement indicates that she only told Mr. Smith of a 'situation'.  It is unknown whether Kristi Brown, Coach Harmon, Coach Franklin, Jodi Pompa, or any of the *'several other people'* referenced by Ms. Coleman in her January 8, 2021 Statement reported the 'situation' to CPS, law enforcement, or any administrative agency.

**<u>Mr. Smith was 'encouraged' by LEISD to resign</u>**

23. On January 4, 2021, Mr. Smith was told by Ms. Crass that he couldn't work at LEISD anymore, would likely be terminated, and was "encouraged" to submit a written letter of

resignation effective February 10, 2021. In addition, Mr. Smith was told by Ms. Crass and Superintendent Thompson that if he submitted his resignation by February 10 he would be able to keep his insurance.

### "This" incident "had to" be reported to SBEC?

24. Furthermore, during a subsequent January 4, 2021 meeting with Ms. Crass and Mr. Smith, LEISD Superintendent Ronnie Thompson ("Mr.Thompson" or "Superintendent Thompson") was called into the room, and Superintendent Thompson told Mr. Smith that "this" was an incident that **had to** be reported to the State Board of Educator Certification ("SBEC") and that there could be a mark on Mr. Smith's certificate.

### Resign, or be terminated

25. Despite these overwhelming attempts on January 4, 2021 to coerce Kendrick Smith to resign, Mr. Smith refused to submit his resignation.  Mr. Smith was then told that he could stop by the next day (January 5, 2021) to either submit his resignation or sign the termination paperwork.  Mr. Smith was asked by Ms. Crass for his badge and his keys, but Superintendent Thompson told Mr. Smith that he could keep them so that Mr. Smith could get his things out of Mr. Smith's office.

### Suspension, with Pay

26. By January 5, 2021 letter from LEISD Superintendent Ronnie Thompson, 'effective immediately pending the completion of an investigation', LEISD informed Mr. Smith that, 'in the best interests of LEISD', he was placed on administrative leave with pay. Accordingly, Mr. Smith was required to report to the LEISD Human Resources office every scheduled work day in dress code at 8:30 a.m. and 1:30 p.m. to sign in with Brandy Burnett until further notice.  **(See Exhibit E - January 5, 2021 "Suspension with Pay"**

**Letter from LEISD to Kendrick Smith ("January 5, 2021 Suspension with Pay Letter"), attached hereto and fully incorporated by reference herein)**

**Texarkana Gazette: "Mr. Smith placed on Administrative Leave"**

27. Also on January 5, 2021, a statement was released to the Texarkana Gazette stating that Kendrick Smith had been placed on administrative leave due to a 'personal issue'.  On January 6, 2021, another statement was released to the Texarkana Gazette stating that Kendrick Smith was on administrative leave, accompanied by Mr. Smith's photo.

**Letters of Representation sent to LEISD**

28. On January 9, 2021, Letters of Representation were sent by Kendrick Smith's attorney Paul K. Stafford via email to LEISD Superintendent Ronnie Thompson and LEISD School Board President Trevelyan Hodge.  On January 11, 2021, a Letter of Representation along with the January 9, 2021 Letters of Representation were forwarded to LEISD Attorney Rhonda Crass. **(See Exhibit F - 10:25 a.m. Email, January 11, 2021, Letter of Representation from Paul K. Stafford to Rhonda Crass (including January 9, 2021 Letters of Representation to LEISD Superintendent Ronnie Thompson and LEISD School Board President Trevelyan Hodge), attached hereto and fully incorporated by reference herein).**

**LEISD & LEISD's Counsel Disregarded the Letters of Representation**

29. Texas Disciplinary Rules of Professional Conduct, *4.02 Communication with One Represented by Counsel*, states:

> In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

30. Despite the Letters of Representation from Mr. Smith's Counsel to LEISD School Board, Superintendent, and Counsel, LEISD engaged in improper direct communications with Kendrick Smith when LEISD knew that Kendrick Smith was represented by counsel, including, but not limited to, on the following dates:

a. January 11, 2021 by Rhonda Crass, via voicemail to Mr. Smith **(See Exhibit G - January 11, 2021 - 9:37 a.m. Voicemail from Rhonda Crass to Kendrick Smith, fully incorporated by reference herein)**

b. January 19, 2021 by Ronnie Thompson, in person, regarding Notice of Reassignment;

c. January 21, 2021 and January 25, 2021 by Ronnie Thompson, in person, during which he was instructed by Kendrick Smith to 'communicate through the attorneys';

d. February 9, 2021 by attempt to conduct the Level II Grievance without informing Kendrick Smith's counsel prior to the Level II Grievance hearing;

e. on multiple occasions since February 9, 2021 by Superintendent Thompson, in person, at the behest of the LEISD School Board (by his admission to Mr. Smith);

f. by 'Hand Delivery' of the March 3, 2021 Level Two Complaint Response to Kendrick Smith, but failing to include Mr. Smith's counsel;

g. through attempts by Superintendent Thompson on March 29, 2021, in person, to circumvent Mr. Smith's counsel and discuss 'resolving' this matter directly with Mr. Smith **(See Exhibit H – Emails, March 29, 2021, between LEISD Superintendent Thompson and Kendrick Smith, attached hereto and fully incorporated by reference herein)**; and,

    h.  April 6, 2021 and April 19, 2021 by Superintendent Thompson, in person, saying to Mr. Smith that 'the board wanted him to reach out to Mr. Smith to see if we could address Mr. Smith's salary for 2021-2022' (which is potentially a violation of the Open Meetings Act by LEISD, by Superintendent Thompson, and by the LEISD Board) **(See Exhibit I - Emails, April 6 & 19, 2021, regarding LEISD Superintendent Thompson's communications with Kendrick Smith, attached hereto and fully incorporated by reference herein)**

31. Such conduct is a violation of *Texas Disciplinary Rules of Professional Conduct 4.02*, and constitutes a 'knowing, assisted, or induced' violation of the rules pursuant to *8.04(a)(1)*, "conduct involving dishonesty, fraud, deceit, or misrepresentation" in violation of *8.04(a)(3)*, and 'obstruction of justice' in violation of *8.04(a)(4)*. Such unethical conduct should not be tolerated, and is indicative of the manner in which LEISD and its representatives disregard their obligations under the law.

**<u>Mr. Smith's Reassignment to 'Transportation Coordinator'</u>**

32. On January 19, 2021 Mr. Smith was reassigned to "Transportation Coordinator" (effective January 20, 2021). **(See Exhibit J - January 19, 2021, Notice of Reassignment (to "Transportation Coordinator") ("January 19, 2021 Notice of Reassignment"), and See Exhibit K - Specific Directives & Job Description for "Transportation Coordinator" (January 19, 2021) ("Special Directives & Job Description"), attached hereto and fully incorporated by reference herein).**

33. The reassignment was consistent with LEISD's authority to reassign pursuant to LEISD Board Policy and Paragraph 5.3 of the *Term Contract*. With the reassignment, Mr. Smith's salary remained unchanged for the remainder of the 2020-2021 school year; however, Mr.

Smith's salary was scheduled to be reduced to an annualized $62,700 during the 2021-2022 school year – a reduction which is inconsistent with the *Term Contract* for a certified administrator, as Smith was reassigned to a non-certified position. (**Exhibit A "Term Contract"**)

### Reassignment, not Termination

34. On January 19, 2021, Mr. Smith's Counsel emailed LEISD's Counsel inquiring as to whether LEISD had yet reported this 'Incident' to SBEC, and whether LEISD would request that the Texarkana Gazette would issue a retraction, and whether LEISD would forward to Mr. Smith's Counsel any non-privileged documents relied upon by LEISD substantiating the suspension or reassignment of Mr. Smith.  Following the January 19, 2021 email, on January 21, 2021, Mr. Smith received a visit from Superintendent Thompson, who stated to Smith that, with the reassignment, termination was now 'off the table'; however, Thompson reiterated the District's false contention that it was **'required'** to report to SBEC Mr. Smith's alleged acts and omissions regarding failure to report child abuse and neglect. On January 25, 2021, LEISD's Counsel reponded to the January 19, 2021 email.  (**See Exhibit L – January 19-25, 2021 Email communications between Felicia Webb, Rhonda Crass, and Paul K. Stafford, attached hereto and fully incorporated by reference herein**)

### Mr. Smith's Level I Grievance:

35. On January 27, 2021, after initially being informed by LEISD's Brandy Burnett that there was no specific form for filing a grievance, Smith received an email from Burnett that she

had found the form and it was attached to the email.  Smith submitted the Employee Complaint Form - Level I Grievance **(See Exhibit M - Employee Complaint Form – Level I Grievance ("Level I Grievance", submitted February 1, 2021, attached hereto and fully incorporated by reference herein)**, which stated that:

    a. *Pursuant to the Term Contract, Smith is to be employed as a "certified administrator"; however, Smith was reassigned to the "non-certified administrator" position of "Transportation Coordinator".  As the requested remedy, Smith requested full reinstatement to the position of principal at Liberty-Eylau High School.*

    b. *Smith also objected to a salary change during the course of the Term Contract. As the requested remedy, Smith requested that his salary remain unchanged throughout the Term Contract.*

    c. *Smith also stated that he was not consulted by LEISD school administration prior to being interviewed by Ms. Crass during the course of the District's investigation.  As the requested remedy, Smith requested a hearing before the LEISD Board of Trustees regarding what LEISD characterized as "Grievances 1, 2, and 3".*

### LEISD's Retaliation Against Mr. Smith

36. On February 2, 2021, immediately following LEISD's receipt of the February 1, 2021 Level I Grievance from Kendrick Smith, and in retaliation for Mr. Smith filing his Level I Grievance, LEISD sent correspondence to the Director of Investigations of the Texas Education Agency regarding State Board for Educator Certification ("SBEC").   **(See Exhibit N - LEISD's (Superintendent Ronnie Thompson's) February 2, 2021 Letter to Kendrick Smith, with copy of Report to the SBEC ("February 2, 2021 Report to SBEC"), attached hereto and fully incorporated by reference herein).**

37. Superintendent Thompson states in his February 2, 2021 letter to Kendrick Smith that "Texas Education Code Section 21.006(b)(2)(E) and 19 Texas Administrative Code Section 249.14(d)(2)(E) **require** a superintendent to submit a report to SBEC upon learning that a certified educator *committed* a criminal offense or any part of a criminal offense on

school property." **(Exhibit N "February 2, 2021 Report to SBEC").  See Exhibit O Texas Education Code Section 21.006, attached hereto and fully incorporated by reference herein**.  See also **Exhibit P, 19 Texas Administrative Code Section 249.14, attached hereto and fully incorporated by reference herein**.  See also **Exhibit Q, 19 Texas Family Code Sections 261.101 & 261.109, attached hereto and fully incorporated by reference herein.**

**Level I Grievance Hearing Held as a Level II Grievance Hearing**

38. The Level I Grievance hearing was held as a Level II Grievance before LEISD Superintendent Ronnie Thompson as the lowest level administrator with authority to grant Kendrick Smith's requested relief. **(See Exhibit T - Recording of February 9, 2021 Level II Grievance Hearing ("February 9, 2021 Level II Grievance Hearing"), fully incorporated by reference herein)**

39. Mr. Smith asserted what LEISD characterized as "Grievances 1, 2, and 3", with Mr. Smith's attorney attending by phone due to lack of notice being provided to him by LEISD. **(Exhibit T "February 9, 2021 Level II Grievance Hearing")**

40.  During the February 9, 2021 Level II Grievance Hearing, Rhonda Crass and LEISD admitted that there had been no reply to the February 2, 2021 email from Mr. Smith's attorney, with no explanation provided.  **(Exhibit T "February 9, 2021 Level II Grievance Hearing")** Immediately following the February 9, 2021 Level II Grievance Hearing, Mr. Smith's attorney re-sent to Rhonda Crass and Felicia Webb the February 2, 2021 email with the same inquiries and the same requests regarding pertinent information.  **(Exhibit**

R **"February 2 & 9, 2021 Emails"**) The February 9, 2021 email was again ignored by Rhonda Crass and LEISD.

41. A recording of the February 9, 2021 Level II Grievance Hearing was requested at the time of the hearing, and on February 12, 2021, LEISD Attorney Crass forwarded a partially audible recording.  Upon request, a more audible recording was forwarded by LEISD Attorney Webb on February 25, 2021. **(Exhibit T "February 9, 2021 Level II Grievance Hearing")**

**LEISD Level II Grievance Response**

42. On March 3, 2021, LEISD issued its Level II Grievance Response **(See Exhibit U - Level Two Complaint Response (received March 3, 2021) ("Level Two Complaint Response"), attached hereto and fully incorporated by reference herein)**

   a. *As to Grievance 1:  Pursuant to the Term Contract, Kendrick Smith is to be employed as a "certified administrator"; however, Mr. Smith was reassigned to the "non-certified administrator" position of "Transportation Coordinator".  As the requested remedy, Mr. Smith requested full reinstatement to the position of principal at Liberty-Eylau High School.  LEISD denied Mr. Smith's requested remedy; however, the District decided to reassign Mr. Smith to the "certified administrator" position of Assistant Principal at the Disciplinary Alternative Education Program ("DAEP").*
   b. *As to Grievance 2:  Kendrick Smith objected to a salary change during the course of the Term Contract. As the requested remedy, Mr. Smith requested that his salary remain unchanged throughout the Term Contract.  LEISD denied Mr. Smith's requested remedy - asserting that LEISD is permitted to make changes to compensation in accordance with the law, maintaining Mr. Smith's current salary during 2020-'21 of the Term Contract, and indicating LEISD's intention to pay Mr. Smith commensurate with the DAEP position (which would be a lower salary than the Term Contract for 2021-2022).*
   c. *As to Grievance 3:  Kendrick Smith stated that he was not consulted by LEISD school administration prior to being interviewed during the course of the District's investigation.  As the requested remedy, Mr. Smith requested a hearing before the LEISD Board of Trustees regarding Grievances 1, 2, and 3.  LEISD stated that, in accordance with Board Policy, Mr. Smith was entitled to appeal the Level II Response and file a Level III Grievance to be heard by the LEISD Board.*

43. The March 3, 2021 Level Two Response stated that a Level III appeal form was attached, but it was not.  Upon inquiry by Mr. Smith's counsel, Smith received a copy of the Level III appeal form from LEISD on March 4, 2021.

**Mr. Smith's Level III Grievance**

44. On March 9, 2021, Mr. Smith filed a "Notice of Appeal to the Board – Level III", **(See Exhibit V - Notice of Appeal to the Board – Level III (submitted March 9, 2021) ("Level III Grievance"), attached hereto and fully incorporated by reference herein),** accompanied by the "Employee Complaint Form – Level 1" previously filed February 1, 2021 **(Exhibit M "Level I Grievance")**, and the March 3, 2021 "Level Two Complaint Response" **(Exhibit U "Level II Complaint Response').**

**Mr. Smith Reassignment to Assistant Principal of DAEP**

45. On March 17, 2021, Mr. Smith received a letter from LEISD that his new job description was ready, and that he would start on March 18, 2021.  **(See Exhibit W - Notice of Reassignment (to Assistant Principal of DAEP)(March 17, 2021, effective March 18, 2021) ("Notice of Re-reassignment"), attached hereto and fully incorporated by reference herein)**  Mr. Smith was 're-reassigned' to the certified position of Assistant Principal of Disciplinary Alternative Education Program ("DAEP"). **(Exhibit W "Notice of Re-reassignment")** This 're-reassignment' addressed the requirement for a 'certified administrator' position per the *Term Contract* **(Exhibit A "Term Contract")** but did not address the 'Grievance 2' regarding no reduction in salary from the *Term Contract* **(Exhibit M "Level I Grievance" and Exhibit V "Level III Grievance")**.  For the remainder of the

2020-2021 school year, Smith's salary was to remain unchanged from the *Term Contract*; however, for the 2021-2022 school year, Smith's annualized salary was to be $70,224 (a reduced salary from the Term Contract). **(Exhibit W "Notice of Re-reassignment")**

### Level III Grievance Hearing at LEISD Board

46. On March 22, 2021, Mr. Smith received the board book record from LEISD for the March 25, 2021 Level III Grievance Hearing. **(See Exhibit X - March 25, 2021 Level III Grievance Board Book from LEISD ("Level III LEISD Board Book"), attached hereto and fully incorporated by reference herein)**

47. During the March 25, 2021 LEISD Special Board Meeting, Mr. Smith's attorney asserted Mr. Smith's grievances, informed the LEISD Board of the February 2, 2021 and February 9, 2021 emails to Rhonda Crass and Felicia Webb, informed the LEISD Board of the intentional non-responsiveness by Rhonda Crass, Felicia Webb, and LEISD, and reiterated to the LEISD Board the relevance and pertinence of the inquiries and requests contained therein. **(See Exhibit Y - Email, April 6, 2021, from Desiree Griffith (of Leasor Crass, P.C.) to Paul K. Stafford, Dropbox link to recording of March 25, 2021 LEISD Special Board Meeting ("Recording of Level III Grievance Hearing"), fully incorporated by reference herein)**

48. After presentations regarding the Level III Grievance from Mr. Smith's attorney and LEISD Superintendent Thompson's attorney Felicia Webb to the LEISD Board, the LEISD Board had no questions for Mr. Smith's attorney, but did call LEISD Superintendent Thompson into their closed session during their deliberation.  Following an approximately one hour closed session deliberation, and at the conclusion of the March 25, 2021 Special

Board Meeting, the LEISD Board tabled Smith's Level III Grievance determination until an unspecified 'future meeting'. **(Exhibit Y "Recording of Level III Grievance Hearing")**

49. On the same date of the March 25, 2021 LEISD Board Meeting, the Texas Education Agency mailed correspondence to Kendrick Smith, indicating that, based upon the report of allegations of 'failure to report child abuse/neglect', an investigation had been launched through the State Board of Educator Certification regarding Kendrick Smith. **(See Exhibit Z - TEA Written Notice of Investigation, re Report to SBEC ("March 25, 2021" TEA Written Notice of Investigation), attached hereto and fully incorporated by reference herein)** Accordingly, on March 25, 2021, while Kendrick Smith was exercising his due process and pursuing a remedy from the delayed determination of the LEISD Board through the Level III grievance process, a notation appeared on Kendrick Smith's certification record indicating that his certification was under investigation by the TEA. **(See Exhibit AA - Texas Educators Certificate (as of March 29, 2021), attached hereto and fully incorporated by reference herein)**

50. Given the receipt of the TEA Written Notice of Investigation, and LEISD Board's continuation of the grievance determination, Mr. Smith's counsel contacted the TEA (Investigator Deborah Owen) and requested and received additional time from Deborah Owen of the TEA SBEC to submit written show cause as to removal of this unwarranted investigation notice from Mr. Smith certification record. Deborah Owen was professional and courteous, and graciously provided the additional time.

51. On March 29, 2021, Mr. Smith's attorney requested a recording of March 25, 2021 Special Board Meeting. There was a recording of the proceedings, but no transcript. The recording

was received from LEISD on April 6, 2021. **(Exhibit Y "Recording of Level III Grievance Hearing")**

### The LEISD Board Reconvenes, and Grants Mr. Smith His Full Salary

52. On April 22, 2021, the LEISD Board reconvened for the determination of Mr. Smith's Level III Grievance.  After additional deliberation, the LEISD Board took no action on Grievance points 1 & 3, as the relief had already been granted; however, the LEISD Board granted Grievance point #2, and (although reassigned to the position of Assistant Principal for DAEP) granted Mr. Smith his full salary per his *Term Contract* for the 2021-2022 school year ending June 30, 2022.  **(Exhibit BB - Unofficial Minutes of April 22, 2021 LEISD Board Meeting ("Unofficial Minutes of April 22, 2021 LEISD Board Meeting"), attached hereto and fully incorporated by reference herein)**

53. On April 27, 2021, LEISD sent Mr. Smith's attorney a letter articulating the decision of the LEISD Board. **(See Exhibit CC - April 27, 2021 Letter re Level III Hearing Decision and Request for Information, attached hereto and fully incorporated by reference herein)**

### The TEA SBEC Investigation Is Closed, With No Action Taken

54. As a result of improper reporting to SBEC by Liberty Eylau ISD, in response to an investigation by TEA SBE, and based upon the foregoing facts, law, and circumstances, Kendrick Smith requested the Department of Investigations, Texas Education Agency, State Board of Educator Certifications to remove all investigation notices from Kendrick Smith's Certification Record.

55. After Mr. Smith's Counsel's submission of materials in response to a request from TEA. **(See Exhibit DD – May 10, 2021 Response and Show Cause Submission to TEA, attached hereto and fully incorporated by reference herein)**, the TEA closed the investigation on June 8, 2021 **(See Exhibit EE – June 8, 2021 Closure Letter from TEA, attached hereto and fully incorporated by reference herein)** as the matter was without merit, stating:

> *The official inquiry undertaken by the Texas Education Agency, Educator Leadership and Quality Division, has been completed.  The circumstances currently surrounding the investigation were deemed not to warrant further action at this time and the case is administratively closed.*

56. LEISD conducted an investigation into the matter pertaining to the facts and allegations articulated above, and a LEISD Police Department Supplemental Report was created, dated December 23, 2021.  See **Exhibit S – LEISD Supplemental Report, dated December 23, 2021, attached hereto and fully incorporated by reference herein**.  Despite direct and repeated inquiries and requests by Mr. Smith's Counsel to LEISD and LEISD's Counsel for any documents pertaining to this matter, and the results of any investigation into this matter, neither this Supplemental Report, nor the Report which it supplements, were ever produced to Mr. Smith or Mr. Smith's Counsel by LEISD.  In addition, Mr. Smith has never been charged with a criminal offense arising out of this matter, and based upon information and belief, no criminal charges have arisen from any of the facts contained in the Supplemental Report.

57. On February 17, 2022, Kendrick Smith filed a Complaint with the EEOC due to discrimination based upon race, color, and national origin, as well as harassment, and retaliation **(See Exhibit FF – February 17, 2022 Charge of Discrimination to EEOC by Kendrick Smith against LEISD, attached hereto and fully incorporated by reference**

**herein)** The EEOC subsequently issued a Right to Sue Letter on July 29, 2022.   . **(See Exhibit GG – July 29, 2022 Right To Sue Letter from EEOC to Kendrick Smith, attached hereto and fully incorporated by reference herein).** Consequently, Plaintiff Kendrick Smith files this Complaint seeking redress for the acts and omissions of LEISD.

## VII.   <u>CAUSES OF ACTION</u>

**A) Racial Discrimination in Violation of Title VII (42 U.S.C. § 2000e – 2(a)(1))**

58. Plaintiff Smith incorporates the preceding paragraphs as if fully stated herein.

59. Plaintiff Smith timely filed a Charge with the EEOC complaining of discrimination (based upon race, color, and national origin) by Defendant Liberty Eylau Independent School District, and has received a Notice of Right to Sue.

60. Plaintiff Smith has alleged facts showing that he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

61. Plaintiff Smith is a member of a protected class (Black/African-American).

62. Plaintiff Smith worked at Liberty Eylau Independent School District for over six (6) years, and was qualified for the position that he held with Liberty Eylau Independent School District as well as the positions for which he was qualified but never had an opportunity to apply or to attain.

63. Plaintiff Smith suffered tangible adverse employment actions in relation to his reporting discrimination and harassment, his filing of Grievances, and for filing an EEOC Charge.

64. Plaintiff Smith has been subjected to discrimination and harassment based upon his race (Black/African-American), color, and national origin that has been unwelcome, undesirable, or offense to him, and the discrimination and harassment complained of altered a term, condition, or privilege of his employment creating a hostile work environment for Kendrick Smith in violation of Tex. Labor Code Ch. 21 § 21.051 and 42 U.S.C. § 2000e(2)(a)(1).  Defendant Liberty Eylau Independent School District knew or should have known of the discrimination and harassment, but failed to take prompt, remedial action to eliminate it.

65. Plaintiff Smith was treated less favorably by Liberty Eylau Independent School District than other similarly situated employees outside his protected group, and was reassigned by Liberty Eylau Independent School District.

66. Defendant Liberty Eylau Independent School District's wrongful acts, and the conduct of its agents and/or employees (including Superintendent Ronnie Thompson) acting within the scope and course of their employment with Liberty Eylau Independent School District, have been the proximate cause of Plaintiff Smith's injuries and damages.

67. As a result of Defendant Liberty Eylau Independent School District's unlawful and improper conduct, Plaintiff Smith has suffered and expects to suffer pecuniary losses, including, but not limited to, lost wages and other employment benefits, humiliation, damage to professional and personal reputation, undue stress, anxiety, mental distress and anguish, and other non-pecuniary losses.  As such, Plaintiff Smith seeks actual and compensary damages.  Additionally Plaintiff Smith seeks equitable relief necessary to return him to the pecuniary position that he would have held but for Defendant's unlawful and improper conduct.

68. Defendant Liberty Eylau Independent School District acted intentionally, with malice and/or reckless indifference to Plaintiff Smith's rights; therefore, Plaintiff Smith is entitled to punitive damages.

69. Defendant Liberty Eylau Independent School District's discriminatory conduct forced Plaintiff Smith to retain the assistance of counsel in order to redress the harms inflicted upon Plaintiff Smith.   Consequently, Plaintiff Smith seeks reasonable and necessary attorney's fees, expert fees, and court costs under 42 U.S.C. § 2000e-5(k) and Tex. Labor Code § 21. 259.

**B.  Harassment (42 U.S.C. § 2000e)**

70. Plaintiff Smith incorporates the preceding paragraphs as if fully stated herein.

71. Plaintiff Smith has alleged facts showing that he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).  See also *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999).

72. Plaintiff Smith is a member of one or more protected classes (race: Black/African-American).

73. Plaintiff Smith worked at Liberty Eylau Independent School District for over six years, and was qualified for the position that he held with Liberty Eylau Independent School District, as well as the positions for which he was qualified but never had an opportunity to apply or to attain.

74. Plaintiff Smith suffered tangible adverse employment actions in relation to his reporting discrimination and harassment, for filing Grievances, and for filing an EEOC Charge.

75. Plaintiff Smith has been subjected to discrimination and harassment based upon his race, color, and national origin that has been unwelcome, undesirable, or offense to him, and the discrimination and harassment complained of altered a term, condition, or privilege of his employment creating a hostile work environment for Kendrick Smith in violation of Tex. Labor Code Ch. 21 § 21.051 and 29 U.S.C. § 621 et seq.   Defendant Liberty Eylau Independent School District knew or should have known of the discrimination and harassment, but failed to take prompt, remedial action to eliminate it.

76. Plaintiff Smith was treated less favorably by Liberty Eylau Independent School District than other similarly situated employees outside his protected group, and was reassigned by Liberty Eylau Independent School District.

77. Defendant Liberty Eylau Independent School District's wrongful acts and the conduct of its agents and/or employees (including Ronnie Thompson) acting within the scope and course of their employment have been the proximate cause of Plaintiff Smith's injuries and damages.

78. As a result of Defendant Liberty Eylau Independent School District's unlawful and improper conduct, Plaintiff Smith has suffered and expects to suffer pecuniary losses, including, but not limited to, lost wages and other employment benefits, humiliation, damage to professional and personal reputation, undue stress, anxiety, mental distress and anguish, and other non-pecuniary losses.   As such, Plaintiff Smith seeks actual and compensary damages.   Additionally Plaintiff Smith seeks equitable relief necessary to

return him to the pecuniary position that he would have held but for Defendant's unlawful and improper conduct.

79. Defendant Liberty Eylau Independent School District acted intentionally, with malice and/or reckless indifference to Plaintiff Smith's rights, therefore, Plaintiff Smith is entitled to punitive damages.

80. Defendant Liberty Eylau Independent School District's discriminatory conduct forced Plaintiff Smith to retain the assistance of counsel in order to redress the harms inflicted upon Plaintiff Smith.  Consequently, Plaintiff Smith seeks reasonable and necessary attorney's fees, expert fees, and court costs under 42 U.S.C. § 2000e-5(k) and Tex. Labor Code § 21.259.

**C. Retaliation in Violation of TCHRA (Tex. Labor Code Ch. 21 § 21.055) and Title VII (42 U.S.C. § 12203 and 42 U.S.C. § 2000e – 3(a))**

81. Plaintiff Smith incorporates the preceding paragraphs as if fully stated herein.

82. Plaintiff Smith has alleged facts showing that he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). *See also Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999).

83. Plaintiff Smith is a member of one or more protected classes (race: Black/AfricanAmerican).

84. Plaintiff Smith worked at Liberty Eylau Independent School District for over six years, and was qualified for the position that he held with Liberty Eylau Independent School District

as well as the positions for which he was qualified but never had an opportunity to apply or to attain.

85. Plaintiff Smith suffered tangible adverse employment actions in relation to his reporting discrimination and harassment, for filing Grievances, and for filing an EEOC Charge.

86. Plaintiff Smith has been subjected to discrimination and harassment based upon his race, color, and national origin that has been unwelcome, undesirable or offense to him, and the discrimination and harassment complained of altered a term, condition, or privilege of his employment creating a hostile work environment for Kendrick Smith in violation of Tex. Labor Code Ch. 21 § 21.051 and 29 U.S.C. § 621 et seq. Defendant Liberty Eylau Independent School District knew or should have known of the discrimination and harassment, but failed to take prompt, remedial action to eliminate it.

87. Plaintiff Smith was treated less favorably by Liberty Eylau Independent School District than other similarly situated employees outside his protected group, and was reassigned by Liberty Eylau Independent School District.

88. Defendant Liberty Eylau Independent School District's wrongful acts and the conduct of its agents and/or employees (including Superintendent Ronnie Thompson) acting within the scope and course of their employment have been the proximate cause of Plaintiff Smith's injuries and damages.

89. As a result of Defendant Liberty Eylau Independent School District's unlawful and improper conduct, Plaintiff Smith has suffered and expects to suffer pecuniary losses, including, but not limited to, lost wages and other employment benefits, humiliation, damage to professional and personal reputation, undue stress, anxiety, mental distress and anguish, and other non-pecuniary losses. As such, Plaintiff Smith seeks actual and

compensary damages. Additionally Plaintiff Smith seeks equitable relief necessary to return him to the pecuniary position that he would have held but for Defendant's unlawful and improper conduct.

90. Defendant Liberty Eylau Independent School District acted intentionally, with malice and/or reckless indifference to Plaintiff Smith's rights, therefore, Plaintiff Smith is entitled to punitive damages.

91. Defendant Liberty Eylau Independent School District's discriminatory conduct forced Plaintiff Smith to retain the assistance of counsel in order to redress the harms inflicted upon Plaintiff Smith. Consequently, Plaintiff Smith seeks reasonable and necessary attorney's fees, expert fees, and court costs under 42 U.S.C. § 2000e-5(k) and Tex. Labor Code § 21.259.

**D.  Hostile Work Environment (42 U.S.C. § 2000e)**

92. Plaintiff Smith incorporates the preceding paragraphs as if fully stated herein.

93. Plaintiff Smith has alleged facts showing that he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).  See also *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999).

94. Plaintiff Smith is a member of one or more protected classes (race: Black/African-American).

95. Plaintiff Smith worked at Liberty Eylau Independent School District for over six years, and was qualified for the position that he held with Liberty Eylau Independent School District,

as well as the positions for which he was qualified but never had an opportunity to apply or to attain.

96. Plaintiff Smith suffered tangible adverse employment actions in relation to his reporting discrimination and harassment, for filing Grievances, and for filing an EEOC Charge.

97. Plaintiff Smith has been subjected to discrimination and harassment based upon his race, color, and national origin that has been unwelcome, undesirable, or offense to him, and the discrimination and harassment complained of altered a term, condition, or privilege of his employment creating a hostile work environment for Kendrick Smith in violation of Tex. Labor Code Ch. 21 § 21.051 and 29 U.S.C. § 621 et seq.  Defendant Liberty Eylau Independent School District knew or should have known of the discrimination and harassment, but failed to take prompt, remedial action to eliminate it.

98. Plaintiff Smith was treated less favorably by Liberty Eylau Independent School District than other similarly situated employees outside his protected group, and was reassigned by Liberty Eylau Independent School District.

99. Defendant Liberty Eylau Independent School District's wrongful acts and the conduct of its agents and/or employees (including Ronnie Thompson) acting within the scope and course of their employment have been the proximate cause of Plaintiff Smith's injuries and damages.

100.     As a result of Defendant Liberty Eylau Independent School District's unlawful and improper conduct, Plaintiff Smith has suffered and expects to suffer pecuniary losses, including, but not limited to, lost wages and other employment benefits, humiliation, damage to professional and personal reputation, undue stress, anxiety, mental distress and anguish, and other non-pecuniary losses.  As such, Plaintiff Smith seeks actual and

compensary damages.  Additionally Plaintiff Smith seeks equitable relief necessary to return him to the pecuniary position that he would have held but for Defendant's unlawful and improper conduct.

101.     Defendant Liberty Eylau Independent School District acted intentionally, with malice and/or reckless indifference to Plaintiff Smith's rights, therefore, Plaintiff Smith is entitled to punitive damages.

102.     Defendant Liberty Eylau Independent School District's discriminatory conduct forced Plaintiff Smith to retain the assistance of counsel in order to redress the harms inflicted upon Plaintiff Smith.  Consequently, Plaintiff Smith seeks reasonable and necessary attorney's fees, expert fees, and court costs under 42 U.S.C. § 2000e-5(k) and Tex. Labor Code § 21.259.

**E.  Defamation & False Light**

103.     On January 5, 2021, a statement was released to the Texarkana Gazette stating that Kendrick Smith had been placed on administrative leave due to a 'personal issue'.  On January 6, 2021, another statement was released to the Texarkana Gazette stating that Kendrick Smith was on administrative leave, accompanied by my photo.  LEISD produced and promoted these statements for publication which were knowingly false when made, were defamatory in nature and effect (Mr. Smith did not have a 'personal issue'), and which portrayed Kendrick Smith in a false light, for which Kendrick Smith now sues.

**F.  Negligent Hiring, Supervision, Training, and Retention**

104.     Plaintiff Smith incorporates the preceding paragraphs as if fully stated herein.

105.     Plaintiff Smith has alleged facts showing that he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some

31

adverse employment action by the employer; and (4) was replaced by someone outside h[is] protected group or was treated less favorably than other similarly situated employees outside the protected group."  *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).  See also *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999).

106.     Plaintiff Smith is a member of one or more protected classes (race: Black/African-American).

107.     Plaintiff Smith worked at Liberty Eylau Independent School District for over six (6) years, and was qualified for the position that he held with Liberty Eylau Independent School, as well as the positions for which he was qualified but never had an opportunity to apply or to attain.

108.     Plaintiff Smith suffered tangible adverse employment actions in relation to his reporting discrimination and harassment, for filing Grievances, and for filing an EEOC Charge.

109.     Plaintiff Smith has been subjected to discrimination and harassment based upon his race, color, and national origin that has been unwelcome, undesirable, or offense to him, and the discrimination and harassment complained of altered a term, condition, or privilege of his employment creating a hostile work environment for Kendrick Smith in violation of Tex. Labor Code Ch. 21 § 21.051 and 29 U.S.C. § 621 et seq.  Defendant Liberty Eylau Independent School District knew or should have known of the discrimination and harassment, but failed to take prompt, remedial action to eliminate it.

110.     Defendant Liberty Eylau Independent School District owed Plaintiff Smith a legal duty of care with respect to the hiring, supervising, training, and retention of its employees.

111.     Defendant Liberty Eylau Independent School District failed in its duty to hire, supervise, train, and retain competent employees when it, among other acts and omissions, permitted Plaintiff Smith's supervisory personnel to assign Plaintiff Smith to the "non-certified administrator" position of "Transportation Coordinator", inconsistent with the Term Contract and with compensation inconsistent with the Term Contract.  In addition, LEISD permitted Plaintiff Smith's supervisory personnel to assign Plaintiff Smith to the "certified administrator" position of "Assistant Principal at the Disciplinary Alternative Education Program ("DAEP")", inconsistent with the Term Contract and with compensation inconsistent with the Term Contract.  Only after Grievances were filed and LEISD Board action was taken were the certification and compensation issues addressed by LEISD.

112.     Plaintiff Smith was treated less favorably by Liberty Eylau Independent School District than other similarly situated employees outside his protected group, and was reassigned by Liberty Eylau Independent School District.

113.     Defendant Liberty Eylau Independent School District's wrongful acts and the conduct of its agents and/or employees (including Superintendent Ronnie Thompson) acting within the scope and course of their employment have been the proximate cause of Plaintiff Smith's injuries and damages.

114.     Defendant Liberty Eylau Independent School District's failures created a dangerous, unsafe, hostile, harassing, and discriminatory work environment, and proximately caused Plaintiff Smith's injuries and damages.  As a result of Defendant Liberty Eylau Independent School District's unlawful conduct, Plaintiff Smith has suffered and expects to suffer pecuniary losses, including, but not limited to, lost wages and other

employment benefits, humiliation, damage to professional and personal reputation, undue stress, anxiety, mental distress and anguish, and other non-pecuniary losses.  As such, Plaintiff Smith seeks actual and compensary damages.  Additionally Plaintiff Smith seeks equitable relief necessary to return him to the pecuniary position that he would have held but for Defendant's unlawful conduct.

115.     Defendant Liberty Eylau Independent School District acted intentionally, with malice and/or reckless indifference to Plaintiff Smith's rights, therefore, Plaintiff Smith is entitled to punitive damages.

116.     Defendant Liberty Eylau Independent School District's discriminatory conduct forced Plaintiff Smith to retain the assistance of counsel in order to redress the harms inflicted upon Plaintiff Smith.  Consequently, Plaintiff Smith seeks reasonable and necessary attorney's fees, expert fees, and court costs under 42 U.S.C. § 2000e-5(k) and Tex. Labor Code § 21.259.

## VIII.   DAMAGES

117.     Plaintiff Smith incorporates the preceding paragraphs as if fully stated herein.

118.     Based upon the foregoing facts and law, Defendant Liberty Eylau Independent School District, through its acts and omission, discriminated against Plaintiff Smith based upon his race, color, and national origin, harassed Plaintiff Smith, and retaliated against Plaintiff Smith, proximately caused Plaintiff Smith's injuries and damages.  In addition, LEISD is liable for negligent hiring, supervision, training, and retention.  Further, LEISD promoted statements which were knowingly false when made, were defamatory in nature and effect, and which portrayed Kendrick Smith in a false light.  As a result of Defendant

Liberty Eylau Independent School District's unlawful and improper conduct, Plaintiff Smith has suffered and expects to suffer pecuniary losses, including, but not limited to, lost wages and loss of other employment benefits in the amount of at least $500,000, humiliation, damage to professional and personal reputation, undue stress, anxiety, mental distress and anguish, and other non-pecuniary losses.  As such, Plaintiff Smith seeks actual and compensary damages.  Additionally Plaintiff Smith seeks equitable relief necessary to return him to the position that he would have held but for Defendant's unlawful conduct.

119.     Defendant Liberty Eylau Independent School District acted intentionally, with malice and/or reckless indifference to Plaintiff Smith's rights, therefore, Plaintiff Smith is entitled to punitive damages, in an amount of at least $500,000 for a hostile work environment, harassment, discrimination based upon race, color, and national origin, and retaliation.

120.     Defendant Liberty Eylau Independent School District's discriminatory conduct forced Plaintiff Smith to retain the assistance of counsel in order to redress the harms inflicted upon Plaintiff Smith.  Consequently, Plaintiff Smith seeks reasonable and necessary attorney's fees of at least $50,000, expert fees, and court costs under 42 U.S.C. § 2000e-5(k) and Tex. Labor Code § 21.259.

## IX.     JURY DEMAND

121.     Plaintiff respectfully requests a trial by jury in this cause.

## X.   **PRAYER**

122.     Based upon the foregoing, Plaintiff Kendrick Smith requests that the Defendant Liberty Eylau Independent School District be cited to appear and answer herein, and that upon a final hearing of this cause, judgment be entered in favor of Plaintiff Smith against Defendant Liberty Eylau Independent School District awarding him the following:  back pay; lost wages and other employment benefits; the value of retirement contributions and vested retirement benefits; equitable relief necessary to place Plaintiff Smith in the pecuniary position that he would have held but for Defendant Liberty Eylau Independent School District's discrimination, harassment, and retaliation; and if such relief be infeasible, front pay; actual damages; compensatory and/or punitive damages, together with pre-judgment interest (from the date of injury through the date of judgment) and post-judgment interest at the maximum rate allowed by law, attorney's fees, expert fees and costs of court, and such other and further relief to which Plaintiff may be entited at law or equity.

Dated: October 27, 2022

**Respectfully Submitted,**

**STAFFORD MOORE, PLLC**

*/s/ Paul K. Stafford*
Paul K. Stafford
State Bar No. 00791716
paul@staffordmoore.law
www.staffordmoore.law
325 N. St. Paul Street, Suite 2210
Dallas, Texas 75201
Telephone (Main):      214-764-1529
Telephone (Direct):    214-764-1531
Facsimile:                    214-580-8104
**ATTORNEYS FOR**
**PLAINTIFF / COMPLAINANT**
**KENDRICK SMITH**

## AFFIDAVIT OF KENDRICK SMITH

STATE OF ILLINOIS             §
                              §
COUNTY OF COOK                §

"I, KENDRICK SMITH, declare that I am over 21 years of age and fully competent to make

this affidavit (the "Affidavit"). The facts set forth herein are true and correct and within my

personal knowledge. I have read the foregoing Plaintiff's Original Complaint, and the facts

stated in the *Factual Background & Procedural History,* the *Causes of Action,* and the *Damages*

sections are within my personal knowledge and are true and correct, unless otherwise qualified

therein.

My date of birth is January 4, 1974 and my address is 104 W. Starlite Drive, Texarkana,

Texas 75501. I declare under penalty of perjury that the foregoing is true and correct.

In this Affidavit, "Mr. Smith" refers to me, Kendrick Smith ("Mr. Smith").

I, Kendrick Smith, state under oath as follows:

### Kendrick Smith

1.  I worked as an educator, coach, and assistant principal at Pleasant Grove in Dallas
    Independent School District for fifteen years before I commenced working with
    Liberty Eylau Independent School District ("LEISD" or the "District") in 2015. I was
    employed with LEISD for six years thereafter.

2.  On February 26, 2020, I executed a "2020-2021 Term Contract 2 Years with
    Certification Addendum" (See **Exhibit A – "Term Contract" (executed February
    26, 2020))** with LEISD in which, among other rights, duties, representations, and
    obligations, the District agreed to employ me as a Certified Administrator for the
    2020-2021 and 2021-2022 school years.

3. I have impressive credentials and an impeccable record of professional service.  I served as Principal of Liberty Eylau High School from my arrival in 2015 until I was improperly removed from the position on January 5, 2021.  LEISD's acts and omissions are inappropriate, unethical, and unjustified, and the investigation resulting from the report submitted by LEISD to TEA SBEC on February 2, 2021 was improper and the allegations unsupported.

**The Group Text**

4. On April 30, 2019, LEISD employee Nidia Coleman ("Ms. Coleman") sent a group text message ("Group Text") to Kristi Brown and three other recipients (none of which was Kendrick Smith) about a 'situation' involving her then 17-year-old daughter, Mariah Coleman ("MC") **(See Exhibit B – April 30, 2019 Group Text Message from Nidia Coleman to Kristi Brown and three other recipients, none of which was Kendrick Smith (2 Emails))** stating as follows:

*AARICA HAS BEEN FUCKING MARIAH SINCE NOVEMBER YALL BETTER WATCH her AROUND YOUR CHILDREN!!!!  I am sure she isn't going to stop seeing her because she is sick in the head and need attention from little girls… Got close to me just to get to my daughter!!! Nasty BITCH!  She was still texting Mariah up to about 10 minutes ago and I caught them together at aarica's HOUSE about 2 hours ago!!! She said Mariah can make her own decisions she didn't make her talk to her even though she is a 35 year old grown ASS NASTY ASS BITCH!!!oh yeah!  This isn't the first underage female she has talked too…Just don't be stupid and let her in yourHB space like I did all she wants is your child I'm sure…She probably talking on the phone with Mariah right now or telling her to come back over!! Hope yall have a good night*

*Figured we all close FRIENDS SO EVERYBODY SHOULD KNOW*

*Oh y'all don't have nothing to say now … Let's have an OPEN discussion!!! I don't have to work tomorrow*

*She just texted mariah that I sent that ina group message…told YALL SHE STILL TEXTING HER*

**The Investigative Interview**

5. On January 4, 2021,  I was called to the LEISD Office for a meeting, but was not informed of the nature of the meeting. Acting as an 'investigator', LEISD attorney Rhonda Crass ("Ms. Crass") began her 'investigative interview' with me by asking 'how long I have known about an inappropriate relationship between 2019 LEISD graduate Mariah Coleman and 2004 LEISD graduate Aarica Ray Boyd ("Ms. Boyd").' I stated that I was not aware of an "inappropriate relationship" between MC and Ms. Boyd, to which Ms. Crass responded "I am going to be straight-up with you, that is a lie.  Mrs. Coleman told me she told you in May 2019 about the incident.  Do you want to start over?"

6. The 'investigative interview' was clearly an interrogation intended to ambush me, who, after being accused by Ms. Crass of lying, further explained that one day in May 2019 I was walking down the hall on a routine walk-through, and went to Ms. Coleman's room, who was also employed with Liberty Eylau High School at that time.  During the routine visit, the conversation led to Ms. Coleman telling me about her daughter MC having a relationship with either Ms. Boyd. I asked Ms. Coleman if this was something that Ms. Coleman wanted to report, to which Ms. Coleman responded "no".    Although Ms. Coleman's response regarding reporting the 'relationship' was informative for me, it was not determinative of my decision as to whether to report the 'relationship'.

7. Startled by the accusatory tone of the 'investigation' and of 'investigator' Ms. Crass, I erroneously stated during the January 4, 2021 interrogation 'I should have run it up the flagpole, but I failed to do so.' **(See Exhibit C – Emails, January 11-12, 2021,**

3

between **Rhonda Crass & Paul K. Stafford ("January 11-12, 2021 Emails"))** This

statement was made under severe duress, and I was aware that running conjecture and

innuendo up a 'flagpole' is not the legal standard for such reporting determinations.

As the recipient of information from Ms. Coleman, my 'cause to believe' was the

legal standard in determining whether to report the information that I received from

Ms. Coleman as *child abuse* or *neglect*. Because I did not have 'cause to believe' that

there was child abuse or neglect, and Ms. Coleman was unwilling or unable to

provide any additional details of the 'relationship' in May 2019, I did not have 'cause

to believe' that there was child abuse or neglect, then or now, and therefore I filed no

report.

### The Statement, about The 'Situation'

**8.** On January 8, 2021, Nidia Coleman executed a statement about the 'situation' (See

**Exhibit D – January 8, 2021 Statement of Nidia Coleman ("January 8, 2021**

**Statement)),** stating as follows:

*I was asked who all knew about the situation. I told her the night I sent a group text*
*message out about what Coach Watson and I had just witnessed. I told her that I told*
*several people about the situation. I told Kristi Brown, Kendrick Smith, Coach Harmon,*
*Coach Franklin, Jodi Pompa, and several other people knew. I told her after I found out*
*I found out several people knew about it before I did.*

*She asked me what I told Mr. Smith. I told her that I told him that Watson and I found my*
*daughter at Aarica's house the night before and that I felt she should be banned from*
*Liberty-Eylau. The investigator asked me what his response. I told her I honestly don't*
*remember the actual response.*

*She asked me if I mentioned to him again at any point. I told her we had conversations*
*about it the next school year and he asked me if I wanted to move forward I did tell him*
*that I had a conversation with my mother and that we decided to let it go and move*
*forward with our lives since it was months later because my child had moved away to go*
*to college, and my mother was now battling cancer. We did not want to cause extra*
*stress at this point.*

*I was asked if I knew if there was a sexually relationship between Mariah and Aarica. I told the investigator that to this day I have no clue if there was a sexual relationship between her and my daughter.*

9.  I was not on the April 30, 2019 Group Text, and Ms. Coleman does not mention in her January 8, 2021 Statement the date she told me about the 'situation'. I don't recall the exact date, but according to the January 8, 2021 Statement, Ms. Coleman told me that she and Coach Watson had found her daughter MC at Aarica's house *the night before* – so, presumably, Ms. Coleman told me about the 'situation' the day after the occurrence of the subject of the April 30, 2019 Group Text, which would be on or about May 1, 2019.

10. During Ms. Crass's interrogation of me on January 4, 2021, I stated that Ms. Coleman told me about the 'relationship' in May 2019; however, Ms. Coleman's Group Text never mentions the word 'relationship', and Ms. Coleman only mentions the phrase 'sexual relationship' in the January 8, 2021 Statement to state that *'to this day I have no clue if there was a sexual relationship between her and my daughter'.* (**Exhibit D – January 8, 2021 Statement**)

11. Regarding my response to Ms. Coleman regarding the 'situation', Ms. Coleman indicated in her January 8, 2021 Statement "I honestly don't remember the actual response." (**Exhibit D - January 8, 2021 Statement**) There is no indication from Ms. Coleman's January 8, 2021 Statement as to when she told the others listed, or who were the 'several other people' that knew, or how Ms. Coleman knew that these 'several other people' knew, or if they were employed with LEISD, or if *Kristi Brown, Coach Harmon, Coach Franklin, Jodi Pompa,* or the *'several other people'* responded in any way, or how. However, if LEISD contends that a conversation in May 2019 is

5

sufficient for 'cause to believe' and should have resulted in a report of child abuse or neglect, there were certainly others who were privy to the 'situation' at that time, and it is unknown whether a report ensued from any of those known or unknown individuals.

12. Although I do not mention or recall any other conversations regarding the 'situation' after May 2019, Ms. Coleman's January 8, 2021 Statement states that she had conversations with me about the 'situation' the next school year; however, no dates or specifics are provided by Ms. Coleman.  I do not recall, but according to Ms. Coleman's January 8, 2021 Statement, I asked Ms. Coleman if Ms. Coleman wanted to move forward, and she told me that she 'had a conversation with her mother and that she and her mother decided to let it go and move forward with their lives since it was months later because Mariah had moved away to go to college, and Ms. Coleman's mother was now battling cancer'.  **(Exhibit D - January 8, 2021 Statement)**

### No evidence of a 'sexual encounter' made known to Mr. Smith

13. During the January 4, 2021 interrogation, I was told by Ms. Crass that I put LEISD in a 'bad position with Title IX' in failing to report a 'sexual encounter'; however, there is no evidence of a 'sexual encounter' being made known to me in a manner that would result in 'cause to believe' that there was child abuse or neglect occurring.

### No 'cause to believe' that child abuse or neglect had occurred or was occurring

14. Also during the January 4, 2021 interrogation by Ms. Crass, I was told by Mr. Crass that 'this could cost me my job', and was asked 'why didn't I report this to CPS'.

The reason is clearly that I did not have 'cause to believe' that child abuse or neglect had occurred or was occurring.  Ms. Coleman has indicated that she saw calls and messages on the call log of MS's phone, but did not state that she saw or read any content or overheard any conversation, and Ms. Coleman's January 8, 2021 Statement indicates that she only told me of a 'situation'.  It is unknown whether Kristi Brown, Coach Harmon, Coach Franklin, Jodi Pompa, or any of the *'several other people'* referenced by Ms. Coleman in her January 8, 2021 Statement reported the 'situation' to CPS, law enforcement, or any administrative agency.

### Mr. Smith was 'encouraged' by LEISD to resign

15. On January 4, 2021, I was told by Ms. Crass that I couldn't work at LEISD anymore, would likely be terminated, and was "encouraged" to submit a written letter of resignation effective February 10, 2021. In addition, I was told by Ms. Crass and Superintendent Thompson that if I submitted his resignation by February 10 I would be able to keep my insurance.  Contrary to LEISD's 'encouragement', I did not resign.

### "This" incident "had to" be reported to SBEC?

16. Furthermore, during a subsequent January 4, 2021 meeting with Ms. Crass and myself, LEISD Superintendent Ronnie Thompson ("Mr.Thompson" or "Superintendent Thompson") was called into the room, and Superintendent Thompson told me that "this" was an incident that **had to** be reported to the State Board of Educator Certification ("SBEC") and that there could be a mark on my certificate.

7

**Resign, or be terminated**

17. Despite these overwhelming attempts on January 4, 2021 to coerce me to resign, I refused to submit my resignation. I was then told that I could stop by the next day (January 5, 2021) to either submit my resignation or sign the termination paperwork. I was asked by Ms. Crass for my badge and my keys, but Superintendent Thompson told me that I could keep them so that I could get my things out of my office.

**Suspension, with Pay**

18. By January 5, 2021 letter from LEISD Superintendent Ronnie Thompson, 'effective immediately pending the completion of an investigation', LEISD informed me that, 'in the best interests of LEISD', I was placed on administrative leave with pay. Accordingly, I was required to report to the LEISD Human Resources office every scheduled work day in dress code at 8:30 a.m. and 1:30 p.m. to sign in with Brandy Burnett until further notice. **(See Exhibit E - January 5, 2021 "Suspension with Pay" Letter from LEISD to Kendrick Smith ("January 5, 2021 Suspension with Pay Letter"))**

**Texarkana Gazette: "Mr. Smith placed on Administrative Leave"**

19. Also on January 5, 2021, a statement was released to the Texarkana Gazette stating that I had been placed on administrative leave due to a 'personal issue'. On January

8

6, 2021, another statement was released to the Texarkana Gazette stating that I was on administrative leave, accompanied by my photo.   The published statements were untrue (I did not have a 'personal issue'), were defamatory, portrayed me in a false light.

**Letters of Representation sent to LEISD**

**20.** On January 9, 2021, Letters of Representation were sent by my attorney Paul K. Stafford via email to LEISD Superintendent Ronnie Thompson and LEISD School Board President Trevelyan Hodge.   On January 11, 2021, a Letter of Representation along with the January 9, 2021 Letters of Representation were forwarded to LEISD Attorney Rhonda Crass. **(See Exhibit F - 10:25 a.m. Email, January 11, 2021, Letter of Representation from Paul K. Stafford to Rhonda Crass (including January 9, 2021 Letters of Representation to LEISD Superintendent Ronnie Thompson and LEISD School Board President Trevelyan Hodge)).**

**LEISD & LEISD's Counsel Disregarded the Letters of Representation**

**21.** Texas Disciplinary Rules of Professional Conduct, *4.02 Communication with One Represented by Counsel*, states:

*In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.*

22. Despite the Letters of Representation from my Counsel to LEISD School Board, Superintendent, and Counsel, LEISD engaged in improper direct communications

9

with me when LEISD knew that I was represented by counsel, including, but not limited to, on the following dates:

    a. January 11, 2021 by Rhonda Crass, via voicemail to me **(See Exhibit G - January 11, 2021 - 9:37 a.m. Voicemail from Rhonda Crass to Kendrick Smith)**

    b. January 19, 2021 by Ronnie Thompson, in person, regarding Notice of Reassignment;

    c. January 21, 2021 and January 25, 2021 by Ronnie Thompson, in person, during which he was instructed by me to 'communicate through the attorneys';

    d. February 9, 2021 by attempt to conduct the Level II Grievance without informing my counsel prior (Paul K. Stafford) of the Level II Grievance hearing;

    e. on multiple occasions since February 9, 2021 by Superintendent Thompson, in person with me, at the behest of the LEISD School Board (by his admission to me);

    f. by 'Hand Delivery' of the March 3, 2021 Level Two Complaint Response to me, but failing to include my counsel;

    g. through attempts by Superintendent Thompson on March 29, 2021, in person, to circumvent my counsel and discuss 'resolving' this matter directly with me **(See Exhibit H – Emails, March 29, 2021, between LEISD Superintendent Thompson and Kendrick Smith)**; and,

h. April 6, 2021 and April 19, 2021 by Superintendent Thompson, in person, saying to me that 'the board wanted him to reach out to me to see if we could address my salary for 2021-2022' (which is potentially a violation of the Open Meetings Act by LEISD, by Superintendent Thompson, and by the LEISD Board) **(See Exhibit I - Emails, April 6 & 19, 2021, regarding LEISD Superintendent Thompson's communications with Kendrick Smith)**

23. Such conduct is a violation of *Texas Disciplinary Rules of Professional Conduct 4.02*, and constitutes a 'knowing, assisted, or induced' violation of the rules pursuant to *8.04(a)(1)*, "conduct involving dishonesty, fraud, deceit, or misrepresentation" in violation of *8.04(a)(3)*, and 'obstruction of justice' in violation of *8.04(a)(4)*. Such unethical conduct should not be tolerated, and is indicative of the manner in which LEISD and its representatives disregard their obligations under the law.

**Mr. Smith's Reassignment to 'Transportation Coordinator'**

**24.** On January 19, 2021 I was reassigned to "Transportation Coordinator" (effective January 20, 2021). **(See Exhibit J - January 19, 2021, Notice of Reassignment (to "Transportation Coordinator") ("January 19, 2021 Notice of Reassignment", and See Exhibit K - Specific Directives & Job Description for "Transportation Coordinator" (January 19, 2021) ("Special Directives & Job Description")).**

25. The reassignment was consistent with LEISD's authority to reassign pursuant to LEISD Board Policy and Paragraph 5.3 of the *Term Contract*. With the reassignment, my salary remained unchanged for the remainder of the 2020-2021 school year; however, my salary was scheduled to be reduced to an annualized

11

$62,700 during the 2021-2022 school year – a reduction which is inconsistent with the *Term Contract* for a certified administrator, as I was reassigned to a non-certified position. (**Exhibit A "Term Contract"**)

## Reassignment, not Termination

26. On January 21, 2021, I received a visit from Superintendent Thompson, who stated to me that, with the reassignment, termination was now 'off the table'; however, Thompson reiterated the District's false contention that it was **'required'** to report to SBEC my alleged acts and omissions regarding failure to report child abuse and neglect.

## Mr. Smith's Level I Grievance:

27. On January 27, 2021, after initially being informed by LEISD's Brandy Burnett that there was no specific form for filing a grievance, I received an email from Burnett that she had found the form and it was attached to the email.  I submitted the Employee Complaint Form - Level I Grievance (**See Exhibit M - Employee Complaint Form – Level I Grievance ("Level I Grievance", submitted February 1, 2021**), which stated that:

   a. *Pursuant to the Term Contract, Smith is to be employed as a "certified administrator"; however, Smith was reassigned to the "non-certified administrator" position of "Transportation Coordinator".  As the requested remedy, Smith requested full reinstatement to the position of principal at Liberty-Eylau High School.*

12

    b. *Smith also objected to a salary change during the course of the Term Contract. As the requested remedy, Smith requested that his salary remain unchanged throughout the Term Contract.*

    c. *Smith also stated that he was not consulted by LEISD school administration prior to being interviewed by Ms. Crass during the course of the District's investigation. As the requested remedy, Smith requested a hearing before the LEISD Board of Trustees regarding what LEISD characterized as "Grievances 1, 2, and 3".*

### LEISD's Retaliation Against Mr. Smith

28. On February 2, 2021, immediately following LEISD's receipt of the February 1, 2021 Level I Grievance from me, and in retaliation for my filing his Level I Grievance, LEISD sent correspondence to the Director of Investigations of the Texas Education Agency regarding State Board for Educator Certification ("SBEC").   **(See Exhibit N - LEISD's (Superintendent Ronnie Thompson's) February 2, 2021 Letter to Kendrick Smith, with copy of Report to the SBEC ("February 2, 2021 Report to SBEC")).**

29. Superintendent Thompson states in his February 2, 2021 letter to me that "Texas Education Code Section 21.006(b)(2)(E) and 19 Texas Administrative Code Section 249.14(d)(2)(E) **require** a superintendent to submit a report to SBEC upon learning that a certified educator *committed* a criminal offense or any part of a criminal offense on school property."  **(Exhibit N "February 2, 2021 Report to SBEC")**

### Level I Grievance Hearing Held as a Level II Grievance Hearing

30. The Level I Grievance hearing was held as a Level II Grievance before LEISD Superintendent Ronnie Thompson as the lowest level administrator with authority to

13

grant my requested relief. **(See Exhibit T - Recording of February 9, 2021 Level II Grievance Hearing ("February 9, 2021 Level II Grievance Hearing"))**

31. I asserted what LEISD characterized as "Grievances 1, 2, and 3", with my attorney attending by phone due to lack of notice being provided to him by LEISD. **(Exhibit T "February 9, 2021 Level II Grievance Hearing")**

32. During the February 9, 2021 Level II Grievance Hearing, Rhonda Crass and LEISD admitted that there had been no reply to the February 2, 2021 email from my attorney, with no explanation provided. **(Exhibit T "February 9, 2021 Level II Grievance Hearing")** Immediately following the February 9, 2021 Level II Grievance Hearing, my attorney re-sent to Rhonda Crass and Felicia Webb the February 2, 2021 email with the same inquiries and the same requests regarding pertinent information. **(Exhibit R "February 2 & 9, 2021 Emails")** The February 9, 2021 email was again ignored by Rhonda Crass and LEISD.

33. A recording of the February 9, 2021 Level II Grievance Hearing was requested at the time of the hearing, and on February 12, 2021, LEISD Attorney Crass forwarded a partially audible recording. Upon request by my attorney, a more audible recording was forwarded by LEISD Attorney Webb on February 25, 2021. **(Exhibit T "February 9, 2021 Level II Grievance Hearing")**

**LEISD Level II Grievance Response**

34. On March 3, 2021, LEISD issued its Level II Grievance Response **(See Exhibit U - Level Two Complaint Response (received March 3, 2021) ("Level Two Complaint Response"))**

14

a. *As to Grievance 1:  Pursuant to the Term Contract, Kendrick Smith is to be employed as a "certified administrator"; however, Mr. Smith was reassigned to the "non-certified administrator" position of "Transportation Coordinator".  As the requested remedy, Mr. Smith requested full reinstatement to the position of principal at Liberty-Eylau High School. LEISD denied Mr. Smith's requested remedy; however, the District decided to reassign Mr. Smith to the "certified administrator" position of Assistant Principal at the Disciplinary Alternative Education Program ("DAEP").*

b. *As to Grievance 2:  Kendrick Smith objected to a salary change during the course of the Term Contract. As the requested remedy, Mr. Smith requested that his salary remain unchanged throughout the Term Contract.  LEISD denied Mr. Smith's requested remedy - asserting that LEISD is permitted to make changes to compensation in accordance with the law, maintaining Mr. Smith's current salary during 2020-'21 of the Term Contract, and indicating LEISD's intention to pay Mr. Smith commensurate with the DAEP position (which would be a lower salary than the Term Contract for 2021-2022).*

c. *As to Grievance 3:  Kendrick Smith stated that he was not consulted by LEISD school administration prior to being interviewed during the course of the District's investigation.  As the requested remedy, Mr. Smith requested a hearing before the LEISD Board of Trustees regarding Grievances 1, 2, and 3.  LEISD stated that, in accordance with Board Policy, Mr. Smith was entitled to appeal the Level II Response and file a Level III Grievance to be heard by the LEISD Board.*

35. The March 3, 2021 Level Two Response stated that a Level III appeal form was attached, but it was not.  Upon inquiry by my counsel, I received a copy of the Level III appeal form from LEISD on March 4, 2021.

**Mr. Smith's Level III Grievance**

36. On March 9, 2021, I filed a "Notice of Appeal to the Board – Level III", **(See Exhibit V - Notice of Appeal to the Board – Level III (submitted March 9, 2021) ("Level III Grievance"),** accompanied by the "Employee Complaint Form – Level 1" previously filed February 1, 2021 **(Exhibit M "Level I Grievance"),** and the March

3, 2021 "Level Two Complaint Response" **(Exhibit U "Level II Complaint Response').**

### Mr. Smith Reassignment to Assistant Principal of DAEP

37. On March 17, 2021, I received a letter from LEISD that my new job description was ready, and that I would start on March 18, 2021.  **(See Exhibit W - Notice of Reassignment (to Assistant Principal of DAEP)(March 17, 2021, effective March 18, 2021) ("Notice of Re-reassignment"))** I was 're-reassigned' to the certified position of Assistant Principal of Disciplinary Alternative Education Program ("DAEP"). **(Exhibit W "Notice of Re-reassignment")** This 're-reassignment' addressed the requirement for a 'certified administrator' position per the *Term Contract* **(Exhibit A "Term Contract")** but did not address the 'Grievance 2' regarding no reduction in salary from the *Term Contract* **(Exhibit M "Level I Grievance" and Exhibit V "Level III Grievance")**.  For the remainder of the 2020-2021 school year, my salary was to remain unchanged from the *Term Contract*; however, for the 2021-2022 school year, my annualized salary was to be $70,224 (a reduced salary from the Term Contract). **(Exhibit W "Notice of Re-reassignment")**

### Level III Grievance Hearing at LEISD Board

38. On March 22, 2021, I received the board book record from LEISD for the March 25, 2021 Level III Grievance Hearing. **(See Exhibit X - March 25, 2021 Level III Grievance Board Book from LEISD ("Level III LEISD Board Book"))**

39. During the March 25, 2021 LEISD Special Board Meeting, my attorney asserted my grievances, informed the LEISD Board of the February 2, 2021 and February 9, 2021

emails to Rhonda Crass and Felicia Webb, informed the LEISD Board of the intentional non-responsiveness by Rhonda Crass, Felicia Webb, and LEISD, and reiterated to the LEISD Board the relevance and pertinence of the inquiries and requests contained therein. **(See Exhibit Y - Email, April 6, 2021, from Desiree Griffith (of Leasor Crass, P.C.) to Paul K. Stafford, Dropbox link to recording of March 25, 2021 LEISD Special Board Meeting ("Recording of Level III Grievance Hearing"))**

40. After presentations regarding the Level III Grievance from my attorney and LEISD Superintendent Thompson's attorney Felicia Webb to the LEISD Board, the LEISD Board had no questions for my attorney, but did call LEISD Superintendent Thompson into their closed session during their deliberation.  Following an approximately one hour closed session deliberation, and at the conclusion of the March 25, 2021 Special Board Meeting, the LEISD Board tabled my Level III Grievance determination until an unspecified 'future meeting'. **(Exhibit Y "Recording of Level III Grievance Hearing")**

41. On the same date of the March 25, 2021 LEISD Board Meeting, the Texas Education Agency mailed correspondence to me, indicating that, based upon the report of allegations of 'failure to report child abuse/neglect', an investigation had been launched through the State Board of Educator Certification regarding Kendrick Smith. **(See Exhibit Z - TEA Written Notice of Investigation, re Report to SBEC ("March 25, 2021" TEA Written Notice of Investigation)** Accordingly, on March 25, 2021, while I was exercising my due process and pursuing a remedy from the delayed determination of the LEISD Board through the Level III grievance process, a

notation appeared on my certification record indicating that my certification was under investigation by the TEA. **(See Exhibit AA - Texas Educators Certificate (as of March 29, 2021))**

42. Given the receipt of the TEA Written Notice of Investigation, and LEISD Board's continuation of the grievance determination, my counsel contacted the TEA (Investigator Deborah Owen) and requested and received additional time from Deborah Owen of the TEA SBEC to submit written show cause as to removal of this unwarranted investigation notice from my certification record. Deborah Owen was professional and courteous, and graciously provided the additional time.

43. On March 29, 2021, my attorney requested a recording of March 25, 2021 Special Board Meeting. There was a recording of the proceedings, but no transcript. The recording was received from LEISD on April 6, 2021. **(Exhibit Y "Recording of Level III Grievance Hearing")**

**The LEISD Board Reconvenes, and Grants Mr. Smith His Full Salary**

44. On April 22, 2021, the LEISD Board reconvened for the determination of my Level III Grievance. After additional deliberation, the LEISD Board took no action on Grievance points 1 & 3, as the relief had already been granted; however, the LEISD Board granted Grievance point #2, and (although reassigned to the position of Assistant Principal for DAEP) granted my his full salary per his *Term Contract* for the 2021-2022 school year ending June 30, 2022. **(Exhibit BB - Unofficial Minutes of April 22, 2021 LEISD Board Meeting ("Unofficial Minutes of April 22, 2021 LEISD Board Meeting"))**

45. On April 27, 2021, LEISD sent my attorney a letter articulating the decision of the LEISD Board. **(See Exhibit CC - April 27, 2021 Letter re Level III Hearing Decision and Request for Information)**

**The TEA SBEC Investigation Is Closed, With No Action Taken**

46. As a result of improper reporting to SBEC by Liberty Eylau ISD, in response to an investigation by TEA SBE, and based upon the foregoing facts, law, and circumstances, I requested the Department of Investigations, Texas Education Agency, State Board of Educator Certifications to remove all investigation notices from Kendrick Smith's Certification Record.

47. After my Counsel's submission of materials in response to a request from TEA, the TEA closed the investigation on June 8, 2021 as the matter was without merit, stating:

*The official inquiry undertaken by the Texas Education Agency, Educator Leadership and Quality Division, has been completed.  The circumstances currently surrounding the investigation were deemed not to warrant further action at this time and the case is administratively closed.*

48. On February 17, 2022, I filed a Complaint with the EEOC due to discrimination based upon race, color, and national origin, as well as harassment, and retaliation. The EEOC subsequently issued a Right to Sue Letter on July 29, 2022.  Consequently, Plaintiff I file this Complaint seeking redress for the acts and omissions of LEISD.

49. Based upon the foregoing facts and law, Defendant Liberty Eylau Independent School District, through its acts and omission, discriminated against me based upon his race, color, and national origin, harassed me, and retaliated against me, and proximately caused my injuries and damages.  As a result of Defendant Liberty Eylau Independent School District's unlawful and improper conduct, I suffered and expect to suffer

19

pecuniary losses, including, but not limited to, lost wages and loss of other employment benefits in the amount of at least $500,000, humiliation, defamation, damage to professional and personal reputation, undue stress, anxiety, mental distress and anguish, and other non-pecuniary losses.  As such, I seeks actual and compensary damages.  Additionally I seek equitable relief necessary to return me to the position that I would have held but for Defendant's unlawful conduct.

50. Defendant Liberty Eylau Independent School District acted intentionally, with malice and/or reckless indifference to my rights; therefore, I am entitled to punitive damages, in an amount of at least $500,000 for a hostile work environment, harassment, discrimination based upon race, color, and national origin, and retaliation.

51. Defendant Liberty Eylau Independent School District's discriminatory conduct forced me to retain the assistance of counsel in order to redress the harms inflicted upon me. Consequently, I seek reasonable and necessary attorney's fees of at least $50,000, expert fees, and court costs under 42 U.S.C. § 2000e-5(k) and Tex. Labor Code § 21.259.

FURTHER AFFIANT SAYETH NOT"

KENDRICK SMITH

SUBSCRIBED AND SWORN TO BEFORE ME on the 27th day of October, 2022 to certify which witness my official seal of office.

_____
Notary Public in and for the State of Illinois

OFFICIAL SEAL
JESSICA RIVERA
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 11/01/2025

State of Illinois
County of _Cook_
This instrument was acknowledged
before me on _October 21, 2022_
By _Kendrick Smith_

21